FILED
April 24, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0001793335

SUNTAG & FEUERSTEIN
A Professional Corporation
ABRAM S. FEUERSTEIN (State Bar No. 133775)
The Kress Building
20 N. Sutter Street, 4th Floor
Stockton, CA 95202
Telephone: (209) 943-2004
Facsimile: (209) 943-0905

Attorneys for
Gary R. Farrar, Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>EURO SURFACES, INC.,<br><br>            Debtor.<br>_____ | Case No. 09-26364-C-7<br>Chapter 7<br><br>DC No. SF-4<br><br>MOTION TO REJECT LEASE OF NONRESIDENTIAL REAL PROPERTY AND FOR AUTHORIZATION TO PAY LANDLORD ADMINISTRATIVE RENT CLAIM<br><br>Date: May 6, 2009<br>Time: 9:30 am<br>Dept.: C; Courtroom 35<br>Hon. Christopher M. Klein<br>US Bankruptcy Court<br>501 - I Street, 6th Floor<br>Sacramento, California) |

MOTION TO REJECT LEASE -1-

Gary R. Farrar, the Chapter 7 trustee ("Trustee") of the bankruptcy estate of Euro Surfaces, Inc. (the "Debtor"), hereby applies to the Court for an order authorizing the Trustee to reject the Debtor's lease of non-residential real property, effective as of the close of business on May 15, 2009, for the Debtor's premises located at and commonly known as 25176 Schulte Road, Tracy, California (the "Premises").

Trustee also seeks authority from the Court to pay a postpetition administrative rent claim owed to the Premises landlord through the effective date of the lease rejection, in a stipulated amount of $10,000.

In support of the motion, Trustee represents the following:

1. The Debtor filed a voluntary Chapter 7 petition on April 6, 2009. Gary R. Farrar is the duly appointed interim Chapter 7 trustee.

2. Prior to filing bankruptcy, the Debtor operated a kitchen slab installation business over a 15-year period from 1994 to April 2009. [See Declaration of Gary R. Farrar in Support of Motion to Reject Lease filed herewith (the "Farrar Declaration"), Par. 3]. The Debtor had gross revenues from its business of $7.2 million in calendar year 2008, and $7.5 million in calendar year 2007. [Id.].

3. The Debtor operated its business from the Premises pursuant to a lease agreement dated August 13, 2004 (the "Lease"), with ProLogis North American Properties Fund I LLC, a Delaware limited liability company ("ProLogis" or the

"Landlord"). [See Lease, Exhibit A to Farrar Declaration]. Under the Lease, and the first amendment to the Lease, as of December 1, 2008, the monthly Premises' rent was $20,642. In addition, under the Lease documents, the Debtor was responsible for common area maintenance charges, taxes, insurance, and management fees of an additional $5,331. Hence, the total monthly amount owed by the Debtor to the Landlord was at least $25,973. [Id.].

    4. On or about March 25, 2009, the Landlord issued to the Debtor a Three-Day Notice to Pay or Surrender Possession of the Premises (the "Notice"). [See Three-Day Notice, Exhibit B to Farrar Declaration]. The Notice stated that the Debtor owed the past-due rental amount of $27,278.66.

    5. At the time of the petition, substantial personal property owned by the Debtor, including machinery and equipment used in cutting and polishing kitchen slabs, remained at the Premises (the "Personal Property"). [Farrar Declaration, Par. 6]. Trustee believes that the Personal Property is entirely encumbered by various security interests and that there is little, if any, equity in the Personal Property for the bankruptcy estate. In particular, Butler Johnson Corporation ("BJC"), which is owed in excess of $200,000, appears to hold a blanket security interest in all of the Debtor's Personal Property. [Id.; see generally, Motion to Abandon Personal Property, DC No. SF-5].

    6. Trustee is in the process of abandoning the Personal Property. In connection with the abandonment, BJC is

MOTION TO REJECT LEASE       -3-

agreeable to paying an administrative claim associated with post-petition rent accruals through May 15, 2009, the date rejection is sought, in an amount not to exceed $10,000 (the "Rejection Payment"). In addition, in order to reimburse the estate for its administrative expenses and provide a benefit to creditors, BJC is further agreeable to paying the bankruptcy estate the sum of $15,000 (the "Administrative Payment").

7. In order to effect these arrangements, BJC will therefore pay the bankruptcy estate the sum of $25,000 representing the Rejection Payment and the Administrative Payment by no later than May 15, 2009. [Farrar Declaration, Par. 8].

8. Upon the effective date of the Lease rejection, Trustee shall turn over and restore possession of the Premises to the Landlord.

9. Section 365(a) of the Bankruptcy Code provides that a trustee, subject to Court approval, may assume or reject any executory contract.

10. To the extent that the Lease remains executory,[1] Trustee believes that the rejection of the Lease is in the best interests of the estate.

11. More particularly, the Lease itself does not have value to the estate. [Farrar Declaration, Par. 11]. In that regard, Trustee notes that the downturn in the economy has resulted in numerous vacancies, and that there is substantial

---

[1] In light of the 3-Day Notice, there is an argument that the lease terminated prepetition even if the Trustee remains in possession of the Premises.

MOTION TO REJECT LEASE            -4-

similar warehouse space located in the immediate vicinity of the Premises. [Id.]. Trustee also notes that the monthly rent under the Lease is above market and, indeed, prepetition the Landlord had proposed rent concessions to the Debtor. Even if assignment of the Lease were a possibility, it is extremely unlikely that the Trustee could effect a cure of the prior arrearages and provide adequate assurances of future performance. [Id.].

12. The Lease rejection is also in the best interests of creditors in that it will promote an orderly liquidation of the Debtor's assets. The postpetition administrative rent will be shouldered by a third party, BJC, the Landlord will have certainty concerning the Premises lease, and the estate will realize funds of $15,000.

13. Significantly, as previously noted, the Trustee is seeking to abandon the Personal Property. The abandonment, if granted, will enable BJC to sell the Personal Property at the Premises through the rejection date which, in turn, will maximize the return to BJC and reduce its outstanding indebtedness. The reduction in BJC's debt, in turn, will increase what might be available to general creditors through the liquidation of other personal property owned by the Debtor, consisting of vehicles, to which BJC's security interest did not attach and/or was not otherwise perfected.

PAYMENT OF ADMINISTRATIVE RENT CLAIM

14. By this motion, Trustee is also seeking authority to pay the Rejection Payment to the Landlord promptly

upon its payment to the Trustee by BJC. The payment of the Rejection Payment to the Landlord without further application to the Court is one of the incentives to the Landlord in agreeing to the proposed arrangements, including an administrative payment less than the amount of the Lease rental rate. [Farrar Declaration, Par. 14].

WHEREFORE, Trustee respectfully requests that the Court grant the motion and that the Trustee be authorized to reject the Lease effective as of May 15, 2009. Trustee further requests that the Court approve an administrative claim of $10,000 in favor of the Landlord, and that the Court authorize the Trustee to pay the Rejection Claim promptly upon receipt of available funds.

Dated: April 24, 2009

                    SUNTAG & FEUERSTEIN
                    A Professional Corporation

                    By: /s/ Abram Feuerstein
                        Abram S. Feuerstein
                        Attorneys for
                        Gary R. Farrar, Trustee